Jno. A. Senneff, Appellee, v. Board of Supervisors, Appellants.

**DRAINS:** Assessment of Benefits—Collection of Assessment Followed by Failure to Construct Improvement—Organization of New District—Right of Property Owner. The duty of a newly organized drainage district, which embraces lands within a previously organized district, to credit, on new assessments, the property owners within the previous district with the value of their public drainage improvements, involves the counter duty on the part of such *previous* district to replace in the treasury of the new district the amount of assessments collected by such previous districts for a lateral *which was never constructed*, but which the newly organized district proceeds to construct,—thereby saving the landowner from a *double* assessment. (Sec. 1989-a25, Code Supp., 1913.)

**DRAINS:** Assessment of Benefits—Lateral for Sole Benefit of Owner—Presumption as to Payment. Where a property owner was assessed for his proportionate share of the total cost of a drainage improvement, but the plan and scheme embraced a lateral *for the sole benefit of such property owner*, it will be presumed that his assessment included the total estimated cost of such lateral.

*Appeal from Hancock District Court.*—Joseph J. Clark, Judge.

Monday, January 15, 1917.

Decree for the plaintiff in the court below. Defendant appeals. The opinion discloses the facts.—*Affirmed.*

*Ramsay & Blackstone,* for appellants.

*Senneff, Bliss & Witwer,* for appellee.

Gaynor, C. J.—This case is submitted under an agreed

statement, from which we gather the following facts material to the controversy:

1. DRAINS: assessment of benefits: collection of assessment followed by failure to construct improvement: organization of new district: right of property owner.

In April, 1890, there was established in Hancock County, by proper proceedings, a drainage district known as Drainage District No. 2. This district covered about 12,000 acres of land, including the land owned by the plaintiff. About 8,000 acres of this land were assessed for the cost of the improvement, to wit, $12,992.50.

The scheme and plan involved in the improvement provided for a lateral drain, to be known as Lateral No. 2, to run about 35 rods along the southeast quarter of the southeast quarter of Section 36-96-25, and about 190 rods west and along the south line of the southeast quarter of Section 35. Plaintiff is the owner of this land, and it lies to the north immediately adjoining the proposed lateral. The cost of this lateral, as estimated by the engineer, in his report recommending the establishment of this improvement, was $225. This lateral, if constructed, would affect only plaintiff's land.

All the southeast quarter of Section 36 was included in this Drainage District No. 2, and assessed for the sum of $40 for the improvement. All the southwest quarter of Section 36 was included, and assessed the sum of $350 for this improvement. All of the east half of the southeast quarter of Section 35 was included, and assessed for this improvement the sum of $110. The cost of the entire improvement was assessed pro rata against the entire 8,037 acres, as by law provided, and the owners of the land duly paid the sum into the county treasury; and the same was duly paid out, on proper warrants, for the construction of said improvement. After the same was exhausted, various other levies were made on said land for the purpose of defraying the cost of repairs, etc. The last of the additional levies was made in September, 1902. The amount assessed was $500.

This was duly collected from the owners of the land in the district.

When the assessments were paid, they were passed to the credit of Drainage District No. 2 by the county treasurer, and, when expended, were paid out on warrants drawn against the fund so created; but no separate account was kept showing on what part of said improvement the assessments paid by any particular tract in said district were expended.

In January, 1904, there remained in the office of the treasurer, to the credit of Drainage District No. 2, the sum of $813.40. On April 7, 1907, there was transferred to the account of said district, from the county fund of said amount, the sum of $135. Lateral No. 2, heretofore referred to, was never constructed, and no part of the assessment collected, either for the original construction or repairs, was ever expended on this lateral.

Thereafter, during the year 1905, a petition was filed with the county auditor of Hancock County, asking that Drainage District No. 2, together with Drainage District No. 1, be reorganized, and other lands taken in, which had not been included in either district, and that a new drainage district be created.

Thereafter, a new drainage district was established, known as No. 1 and 2, which included all the land in "1" and "2" as then existing, and about 39,000 acres in addition. Commencing about October, 1906, and continuing until the establishment of this new drainage district, the preliminary expenses were paid by warrants drawn upon the old fund of District No. 2. There was paid out of this fund in this way, prior to May, 1911, the sum of $956.45. After the establishment of District No. 1 and 2, the sum of $956.45 so expended in preliminary work was, by resolution of the board, transferred from the fund of the new district back to the fund of the old District No. 2, and this sum now stands as a credit to District No. 2, and to the property so

included in old District No. 2 before such reorganization. Since the reorganization, this new district has arranged for and is about to construct a lateral known as Lateral No. 14, running practically along the same line that Lateral No. 2 would have run, if it had been constructed by District No. 2 as contemplated in the original scheme, and this new district is about to assess the cost of such lateral against the plaintiff's land.

So far, there is no controversy between the parties either of law or fact. Plaintiff, however, contends that, inasmuch as a portion of this Lateral No. 14, provided for in this new drainage scheme, covers the same territory as Lateral No. 2, and is located at about the same place, his land ought not to be required to pay again for the construction of that portion of the lateral which covers the same territory and gives only the same benefit as the original Lateral No. 2 would have given. This, for the reason that the land was assessed and the assessments paid for this very purpose. This is the only controversy here.

The contention of the plaintiff is that, inasmuch as Lateral No. 2 affected only the land owned by him, and was to be constructed for the purpose only of giving special benefits to his land, and inasmuch as he was assessed for the construction of this Lateral No. 2, by the old and original District No. 2, and inasmuch as this assessment was paid and the ditch was never constructed, the new district, though having the right to construct the ditch and assess the land, ought to be required to credit plaintiff on such assessment the sum originally paid. To this end, the old district ought to be required to pay over to District No. 1 and 2, the amount received, to be by it credited on whatever assessments District No. 1 and 2 may make against plaintiff's land for the construction of this new Lateral No. 14.

Many objections are urged to plaintiff's request.

The district court, of course, found the facts to be as stipulated, and that the owner paid the assessment against

this land for the improvement, including the estimated cost of Lateral No. 2. From this, the conclusion must be reached that it was the duty of District No. 2 to make the improvement; that this duty continued up to the time of making the new improvement. When paid, the owner became entitled to the improvement for which the land was assessed. Among contemplated improvements was this Lateral No. 2, which, the stipulation shows, affected this land alone. He was entitled to this improvement, because it was one of the contemplated benefits for which he was assessed. The estimated cost of this Lateral No. 2 was $225. To meet this, all the land was assessed, including plaintiff's land. The assessment on plaintiff's land, properly made, was controlled by the special benefits actually conferred upon his land. When he paid his assessment, he became entitled to the benefit paid for, to wit, this lateral. It was presumably worth, to the district and to the land within the district, what it would cost to construct it. District No. 2 took plaintiff's money, under the form and sanction of the law, but never gave him that for which he paid. He is not objecting now to the construction of the lateral for which he has paid, but is insisting that, when constructed, the land be not re-assessed for the full cost of the construction, but that he be credited on the amount of any assessment made by this new district, for the new lateral, the amount already paid. If the old district had constructed this Lateral No. 2, and had it there at the time of the creation of the new district, then, by the terms of Section 1989-a25 of the Supplement to the Code, 1913, credit would have been given by the new district, for the improvement, to the parties owning the old improvement, as their interests might appear.

This section reads:

"If any . . . drainage district . . . which may hereafter be established, shall prove insufficient . . . the board of supervisors, upon petition therefor as for the establishment of an original . . . . drainage district, shall

have the power and authority to establish a new . . . drainage district covering and including such old district or improvement, together with any additional lands deemed necessary; and whenever a new district shall be established as contemplated in this section and the new improvement shall extend into or along the former improvement, the commissioners of classification and benefits shall take into consideration the value of such old improvement in the construction of the new improvement and credit the same to the parties owning the old improvement as their interests may appear.''

Equity presumes that done which ought to be done. It is clear, therefore, that, when the old district was established and the lands classified and assessed, the assessments were based upon the thought that the contemplated improvement would be made. The estimated cost of this lateral became a part of the estimated cost of the improvement. When assessments were made, they were made on the basis of benefits received, pro rata, upon the entire property included in the district. To illustrate: If the district were created under the forms of law, land in the district classified and assessed, and the assessments paid, but no work of construction done, and thereafter a new district was organized, including this land covered by the old district, and the same improvements were contemplated by the new district within the limits of the old district, and the new district was about to construct such improvements, and to classify and assess the land for the same, it would clearly appear that the old district would be required to account to the new district, or the parties assessed, for the money so received. If the old district were permitted to retain this money, as against the landowner thus included within the new district, they would be permitted to hold the money which, under the authority and sanction of the law, they had taken from the landowner, without giving him the benefits for which the money was taken. Under the authority and sanction of the law, the old

district assessed the land within the old district for contemplated benefits to be conferred upon the landowner for the construction of improvements for which the assessments were made. When the assessments were made, the landowner became entitled to the improvement. When they classified and assessed the land and took the money, they became bound to give the thing for which the money was taken. If the lateral had been constructed by the old district, there would be no occasion for the construction by the new district. The thing would be there, to be taken into consideration in carrying on the new improvement. But, not having constructed it, they ought, in equity, to be required to account for the money taken from the landowners for its construction. Since, if it had constructed the lateral, it could turn it over to the new district and receive credit, it would seem but just that, in lieu of such improvement, it be required to turn over to the new district the money it received, so that it can be used by the new district in the completion of the original work. This is clearly so when it appears that the benefits from the new improvement are the same, practically, as that for which the original assessment was made and paid.

It is urged that there is nothing to show the amount plaintiff contributed to the construction of Lateral No. 2 in the old drainage district. It does appear, however, that the estimated cost of this lateral was $225. We will presume it to be worth what it cost. There is nothing to show that it would cost more or less to construct it under the new district. Plaintiff was entitled to this Lateral No. 2. His land was classified and assessed for the whole improvement. The scheme provided this for plaintiff's land. The purpose of its construction was to benefit plaintiff's land. Plaintiff, having paid his pro rata share of the entire assessment, is entitled to have the scheme of the original district carried out, in so far as it affects his land. Whatever he paid under

2. DRAINS: assessment of benefits: lateral for sole benefit of owner: presumption as to payment.

his classification, and the assessments made under the classification, were for the benefits conferred. He did not receive the benefits conferred, in so far as this lateral will confer a benefit. It is still thought that this lateral will confer a benefit. The new district contemplates the construction of a lateral along the same line of this original No. 2. Inasmuch as District No. 2 received the whole amount of the assessment made for the benefits conferred, and since this assessment was made to cover the estimated cost of the entire improvement, and since this improvement was in the estimate, it must be considered as paid for by the assessment.

Therefore, District No. 2 was paid for making this particular Lateral No. 2, as a part of the estimated cost of the entire improvement. It has money which should be devoted to the construction of this lateral. Plaintiff is entitled to insist that it be so used. And, since the old district has been reorganized, and has passed into the hands of the new district, and since the new district contemplates doing that which the old district should have done, it seems just and equitable that the old district be required to contribute the amount received, as the estimated cost of this lateral, so that the new district may have it to accomplish that purpose which was involved in the old scheme and assessment, and which, the stipulation shows, affected beneficially only the plaintiff's land. Or, in other words, since the new district, as organized, is about to construct a lateral along the line of the old lateral, and is to assess the plaintiff's land for the cost of its construction, it is apparent that the plaintiff is entitled to have turned over to the new district so much of the amount paid the old district as represents the estimated cost of this lateral; so that the new district, in contemplating this lateral, may credit the assessment made by it, with the amount assessed and collected by the old district. This seems to be dictated by the commonest principles of justice, and we find no arbitrary provision of law standing in the way of the con-

clusion which we have reached.   The case is therefore—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.